IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  07-10034-01, 02, 03, 04-WEB |
| | ) | |
| ACE A. ALDERSHOF, | ) | |
| JOSEPH M. FLOYD, | ) | |
| ANTHONY L. JORDAN, and | ) | |
| ZACHARY W. FLEETWOOD, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**Memorandum and Order**</u>

This matter came before the court on August 17, 2007, for a hearing on the following motions filed by defendants Floyd and Fleetwood: Motion for Bill of Particulars (Doc. 72); Motion to Sever Defendant (Doc. 73); Motion to Join in Co-defendant motions (Doc. 74); Motion to Suppress Statements (Doc. 75); Motion in Limine (Doc. 52); Motion for James Hearing (Doc. 53); Motion to Exclude Evidence of Other Crimes and Convictions (Doc. 54); Motion for Discovery of Impeachment Materials (Doc. 55); Motion to Exclude Guilty Pleas (Doc. 56); and Motion to Join in Motions of Co-defendants (Doc. 57).  This written memorandum sets forth the court's rulings pertaining to the foregoing motions.

I. *Defendant Floyd's Motions*.

1. <u>Motion for Bill of Particulars</u> (Doc. 72).  Defendant Floyd moves for a bill of particulars, pointing out that the Indictment does not include any "manner or means" of the alleged conspiracy. He argues he will be forced to guess as to the acts with which he is being charged.  He further argues that "if the only acts are those listed in Count Two, then Count One or Two should be dismissed as

being duplicitous."

The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense. *United States v. Ivy*, 83 F.3d 1266, 281 (10th Cir. 1996). If the indictment sets forth the elements of the offense, and sufficiently apprises the defendant of the charges to enable him to prepare for trial, a bill of particulars is not necessary. Moreover, a defendant "is not entitled to notice of all of the evidence the government intends to produce, but only the theory of the government's case," because a bill of particulars is not a discovery device. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988).

In this instance, Count 1 quotes the language of Section 846, it includes the date of the conspiracy, the members, and the precise amount of methamphetamine mixture that was the object of the alleged conspiracy. The court concludes the Indictment is sufficient to inform the defendant of the offense and to permit him to prepare his defense. The court further finds the indictment is not duplicitous, because a conspiracy to commit an offense and the actual commission of the offense are separate crimes and may be punished separately. *See United States v. Callwood*, 66 F.3d 1110, 1115 (10th Cir.1995). Accordingly, the motion for bill of particulars is denied.

2. <u>Motion for Severance</u>. (Doc. 73). Defendant Floyd next moves to sever his case from the other defendants, arguing "this is a complex case with many defendants who have markedly different degrees of liability and differing defenses." He also moves, pursuant to *Bruton v. United States*, for an order excluding or redacting any confessions from non-testifying codefendants.

The indictment alleges that the defendants participated in the same acts or series of acts; thus, the defendants are properly joined for trial. *See* Fed.R.Crim.P. 8. Moreover, in a conspiracy trial it is preferred that persons charged together be tried together. *United States v. Ray*, 370 F.3d 1039

(10th Cir. 2004). Joint trials of defendants who are indicted together are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Rule 14 allows for relief from prejudicial joinder, but a court should grant a severance under that rule "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539.

Defendant has not shown a serious risk that a joint trial will compromise a specific trial right or that a jury will be prevented from making a reliable judgment about guilt or innocence. He argues that there are differing levels of culpability among the defendants, but the risk of any "spillover" prejudice appears rather low here given the straightforward circumstances of the alleged offense. Moreover, defendant fails to explain why limiting instructions would not suffice to cure any risk of prejudice. *Cf. United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005). Defendant next claims there may be *Bruton* problems involving statements made by non-testifying co-defendants. At this point, however, the court sees no reason why redaction of any such statements would not be sufficient to comply with *Bruton* and to avoid unfair prejudice. Defendant also argues that his right to testify may be affected by being joined with the co-defendants, but he has not offered any detail as to what testimony he would give and how he is prevented from doing so by a joint trial. In sum, the court finds no grounds for a severance. The court will direct the Government to redact the statements of any non-testifying co-defendants in order to comply with the requirements of *Bruton*.

3. <u>Motion to Suppress Statements</u>. (Doc. 75). Defendant Floyd next moves to suppress any statements he made after being arrested. The defendant's motion alleges that he was stopped by officers in the absence of reasonable suspicion, such that the stop was unlawful and any evidence

obtained from the stop or arrest must be suppressed as "fruit of the poisonous tree." The defendant also denies that he knowingly and voluntarily waived his Miranda rights before giving any statement.

Based on the evidence presented at the hearing, the court makes the following findings. Wichita Police Detective Kevin Real was involved in an investigation of defendant Ace Aldershof, who was suspected of trafficking methamphetamine. Real made arrangements for a "reverse"– a sale of methamphetamine to Aldershof by an individual working with the police. Based on information and assistance from a cooperating individual ("CI"), arrangements were made for the CI to sell a pound of methamphetamine to Aldershof on February 2, 2007, in the parking lot of a fast food restaurant. Officers set up surveillance on the location and searched the CI and wired him for sound in preparation for the transaction. Detective Real was at the scene and could see a portion of the CI's vehicle and could hear the audio transmission. Real saw Aldershof get in the vehicle with the CI and heard some of the conversation. Aldershof indicated that someone had driven him to the location; that individual was later determined to be defendant Zachary Fleetwood. While Aldershof was in the vehicle, Real saw an individual with a large build come up on the passenger side of the CI's vehicle, although he could not see who it was. Real heard portions of conversation, including someone saying, "get out of the car," and he saw Aldershof and the CI get out of the vehicle. Someone got in on the passenger side and the vehicle took off. (Real did not see anyone else get in the car, but review of video surveillance showed that another individual entered the CI's vehicle on the driver's side before it took off.) Aldershof took off running at that point, but he and the driver of his vehicle, Fleetwood, were arrested near the scene. When officers questioned Fleetwood, he told them the two individuals who had ripped off the CI were "Jordan" and "Nigger Joe." He

indicated that Aldershof had arranged for the robbery of the CI and had told these two other individuals that they would all go get high after the robbery.  Defendant Jordan was well-known to the police from prior matters.  Officers showed Fleetwood photos of various black men; he identified a picture of defendant Joseph Floyd as "Nigger Joe."

Officers had information that Floyd might be at the residence of an individual named Molly Korth.  They went to her house and obtained consent from her to search the residence.  No evidence was presented that defendant Floyd had any reasonable expectation of privacy in the residence.  In fact, Detective Real testified that the defendant did not reside at Korth's house.  Officers found Floyd in the residence and arrested him.  He had in his possession credit cards belonging to the CI. Floyd did not make a statement to the police at the time of his arrest.[1]

The validity of a warrantless arrest turns on whether the arresting officers had probable cause. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  Probable cause to justify an arrest exists when "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). While probable cause requires "more than bare suspicion," it does not require proof beyond a reasonable doubt.  *See Brinegar v. United States*, 338 U.S. 160, 175 (1949).  The probable cause standard seeks to safeguard citizens from rash and unreasonable interferences with privacy, while

---

[1]Some time later, after charges were brought and counsel was appointed, defendant Floyd made a statement in the course of plea discussions with the Government.  Such a statement will be inadmissible at trial unless it qualifies for the narrow exceptions outlined in Fed.R.Crim.P. 410.  As that rule applies here, such a statement will not be admissible at trial unless "another statement made in the course of the same ... plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it...."

affording officers leeway to enforce the law for the community's protection. *Id.* at 176. Because many situations confronting officers are somewhat ambiguous, the standard allows some room for mistakes on their part so long as the mistakes are those of reasonable men "acting on facts leading sensibly to their conclusions of probability." *Id.*

The court finds that the officers had probable cause at the time they arrested defendant Floyd. They clearly had reasonable grounds to believe a felony offense had been committed (with officers having been at the scene when it occurred). Additionally, one of the participants in the offense provided the officers with specific information about the transaction and identified defendant Floyd as one of the individuals who robbed the CI. *See e.g., United States v. Brown*, 366 F.3d 456, 459 (3rd Cir. 2004) (accomplice's identification of defendant supported probable cause for arrest). There is nothing in the record to suggest that the officers knew or should have known that the information provided by Fleetwood was incorrect or not reliable. Under the totality of the circumstances, the officers had information giving rise to a reasonable probability that defendant Floyd committed an offense. And although officers arrested the defendant inside a residence without obtaining an arrest or search warrant, there is no evidence to show that Floyd had a reasonable expectation of privacy in the residence, and the uncontroverted evidence before the court is that the person whose residence it was voluntarily consented to let the officers enter and search. Accordingly, the circumstances of the arrest did not violate defendant's fourth amendment rights and provide no basis for suppression of evidence. *Cf. Steagald v. United States*, 451 U.S. 204 (1981) (absent exigent circumstances or consent, officers may not search third-party home for subject of arrest warrant); *Minnesota v. Olson*, 495 U.S. 91 (1990) (overnight guest has reasonable expectation of privacy); *Minnesota v. Carter*, 525 U.S. 83 (1998) (individual who was merely present with the consent of the homeowner had no

reasonable expectation of privacy); *Illinois v. Rodriguez*, 497 U.S. 177 (1990) (Fourth Amendment prohibition does not apply where voluntary consent is obtained from the individual whose property is searched).

4. Motion to Join in Co-defendant's Motions. (Doc. 74). Defendant Floyd's request to join in the motions of co-defendants will be granted to the extend such motions are applicable to this defendant.

II. *Defendant Fleetwood's Motions.*

1. Motion in Limine. (Doc. 52). Defendant Fleetwood has filed a motion in limine seeking to exclude evidence under ten different categories. The Government has responded to each item listed in the motion. Doc. 68. After reviewing the briefs, the court concludes that the Government's response to these items is appropriate. The court will grant the motion in limine to the extent stated in the Government's response.

2. Motion for James Hearing. Defendant Fleetwood requests a *James* hearing to determine the admissibility of co-conspirator statements. The court granted the request for a hearing and scheduled the matter for Monday, August 27, 2007, at 10:00 a.m.

3. Motion to Exclude Evidence of Other Crimes. Defendant Fleetwood moves to exclude evidence of any "other crimes, wrongs or acts" under Rule 404(b). He argues that his previous convictions for juvenile, traffic, and assault offenses have nothing to do with the issues in this case. He further argues that his 1999 conviction for Possession with Intent to Sell Cocaine and Methamphetamine should be excluded because it is remote in time, it did not involve any of the people involved in this case, and it would be unfairly prejudicial.

The Government apparently concedes the inadmissibility of the other convictions, but argues

the defendant's 1999 drug conviction is relevant because it tends to show he knew that a methamphetamine deal was occurring in this instance. It argues the prior conviction shows the defendant's knowledge of drug trafficking encounters, and further shows that he did not deliver the co-defendant to the transaction on February 2 by mistake or accident.

Rule 404(b) provides in part that evidence of prior crimes is not admissible to prove a person's character to show that he acted in conformity therewith, but it may be admissible to show proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Such evidence is admissible if: (1) it is offered for a proper purpose; (2) it is relevant; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, instructs jurors to consider the evidence only for the purpose for which it was admitted. *United States v. Cherry*, 433 F.3d 698, 700-01 (10th Cir. 2007).

The court finds the defendant's 1999 conviction for Possession with Intent to Sell Methamphetamine and Cocaine is admissible under these standards. The evidence is relevant to show the defendant's knowledge, intent, and the absence of mistake relating to defendant Fleetwood's alleged transportation of Aldershof to the meeting on February 2, 2007. Defendant's prior experience with the possession of drugs for the purpose of sale may be relevant to show his knowledge and state of mind with respect to the February 2 transaction allegedly arranged by defendant Aldershof, and to show that he was not at the meeting due to a mistaken understanding of the purpose of that meeting. And although the conviction occurred some seven years ago and may not have involved a transaction identical to the instant one, it does tend to have probative value on the critical issue of the defendant's knowledge. *See e.g., United States v. King*, 225 Fed.Appx.

125, 2007 WL 1302967 (4th Cir, May 3, 2007) (prior conviction admissible to show defendant's knowledge of the drug trade and his willing participation in the conspiracy, and to show he was not present at the scene unaware that a major drug deal was to occur); *United States v. Bustos-Torres*, 396 F.3d 935, (8th Cir. 2005) (defendant's familiarity with drug dealing was relevant where there was an issue of "mere presence" – i.e., whether defendant knew about and intended to participate in drug transaction). The court further finds the probative value of this evidence is not outweighed by the danger of unfair prejudice. The court will, upon request, give the jury a limiting instruction on the consideration of such evidence.

4. Motion for Discovery of Impeachment materials. (Doc. 55). Defendant Fleetwood moves for an order requiring the Government to disclose at least 21 days before trial the following:  a) plea agreements of any co-defendants or other witnesses the Government intends to call; b) any evidence that any prospective government witness has engaged in any criminal act (whether or not resulting in a conviction); and c) any other impeachment material as required by *Giglio v. United States*. [including for the Confidential Informant]

The Government states that once it has made a final decision as to which witnesses will be called to testify, it will provide proper discovery. It states that it will also provide impeaching *Giglio* material.

The court concluded that it would take this motion up if necessary at the August 27 hearing, after the Government has determined which witnesses will likely be called in the case.

5. Motion to Exclude Evidence of Guilty Pleas by Non-testifying Co-defendants. (Doc. 56). The Government essentially concedes this motion, saying it will not make reference to any guilty pleas by non-testifying co-defendants. Accordingly, the motion to exclude such evidence is granted.

*See United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983) (co-defendant's guilty plea may not be used as substantive evidence of defendant's guilt). As to evidence of guilty pleas by any co-defendants who do testify at trial, the Government says it may present such evidence for credibility purposes and may refer to it in voir dire and opening statements. Assuming such evidence is presented at trial, the court will give the jury a limiting instruction on its consideration of the evidence. *Cf. Id*.

  6. <u>Motion to Join in Co-defendant's Motions</u>. (Doc. 57). Defendant Fleetwood's request to join in the motions of co-defendants will be granted to the extend such motions are applicable to this defendant.

  III. *Conclusion*.

  <u>The following motions are hereby DENIED</u>: Motion for Bill of Particulars (Doc. 72), Motion to Sever Defendant (Doc. 73), Motion to Suppress Statements (Doc. 75); and Motion to Exclude Evidence of Other Crimes and Convictions (Doc. 54).

  <u>The following motions are hereby GRANTED to the extent previously stated</u>: Motion in Limine (Doc. 52); Motion to Exclude Guilty Pleas of non-testifying co-defendants (Doc. 56), and Motion to Join in Co-defendant motions (Docs. 57 & 74).

  <u>The court defers a final ruling on the following motions until after the August 27 hearing</u>: Motion for James Hearing (Doc. 53), and Motion for Discovery of Impeachment Materials (Doc. 55).

  IT IS SO ORDERED this  23rd  Day of August, 2007, at Wichita, Ks.

       s/Wesley E. Brown
       Wesley E. Brown
       U.S. Senior District Judge